Harwood *v*. Boardman.

PEREZ HARWOOD *v*. JAMES BOARDMAN.

*Statute. Guardian. Insane Person. Appeal. Probate Court.*

The only alteration of chapter 65. of the Revised Statutes, authorizing the probate court to appoint a guardian for an insane person, with power to act pending an appeal of his ward, which was made by the Act of 1848, No. 42, was that dispensing with an inquisition by justices of the peace, and authorizing the probate court to hear and determine all questions as to insanity. It took away no authority or right given to the guardian by said chapter.

The general statutes, which took effect August 1st, 1863, did not abolish the office of guardian, and their provisions did not revoke the authority of a guardian appointed under a previous statute.

A guardian of an insane person having been duly appointed, and having rendered necessary service and made disbursements in the management of the ward's estate, may recover for his services and disbursements, although a verdict is rendered upon appeal that the ward was not insane.

An appeal having been taken by a ward from the decree of a probate court allowing the guardian's account for services and disbursements, there should be included in the judgment of the appellate court affirming the decree the account for services and disbursemets after the appeal to the close of the guardianship, where it closes prior to the judgment, the action being in substance like that of book account, in which all charges due and payable at the time of trial are adjusted.

THIS was an appeal by James Boardman, of Bennington, from an order and decree of the probate court for the district of Bennington, allowing a certain account presented and rendered to the said probate court by Perez Harwood, of Bennington, of his guardianship for the said James Boardman,—he, Boardman, having been by the probate court adjudged and decreed to be insane and incapable of

taking care of himself, and Harwood having been by the same court duly appointed as the guardian for Boardman. The order and decree was made at a session of the probate court held at Bennington, on the 26th April, 1864, and the appeal was entered in the county court at its June Term in 1864. At the June Term in 1865, Harmon Canfield, Esq., was appointed commissioner to take and report to the court the account of Harwood as guardian for Boardman, as aforesaid, agreeably to the statute in such case made and provided, and at the December Term, 1865, KELLOGG, J., presiding, the commissioner made and returned to the court his report, in which he stated that, upon due application the probate court, on the 8th of November, 1861, declared Boardman insane, and appointed George W. Harman his guardian ; that Harman filed his bond and entered upon the duties of his trust; that on the 19th of November, 1861, Boardman obtained an appeal from the decree of said court, and upon the trial in the county court at the December Term, 1864, the jury returned a verdict which was certified to the probate court, (1) that Boardman at the time said decree was made, was not insane and incapable of taking care of himself, and (2) that he at that time was not insane and incapable of taking care of himself; that said Harman in the meantime continued to discharge his duties as guardian in the management of the estate of his said ward, in good faith and in a judicious manner until the 1st day of November, 1862, when he presented an account of his guardianship to said probate court, and the same on an ex parte hearing was allowed by said probate court, and on the 23d day of December, 1862, resigned his trust, and Perez Harwood was then appointed guardian in his stead by the said probate court, and accepted the trust and entered upon the duties thereof, and so continued until the rendition of the verdict aforesaid, in good faith and performing them in a judicious manner.

The account marked A. was an account of Harwood's guardianship to the time of the decree of the probate court allowing the same, from which the appeal in this case is taken. And the account marked B., from that time until the close of the guardianship. The former account, including interest, amounted to $448.83 ; the latter to $55.16. The several items in the account of said Harman were his necessary personal services and expenditures in the care and manage-

ment of said Boardman's estate during the continuance of his guardianship, and the remaining items of debit in both the accounts marked A. and B. were for necessary services of Harwood and expenditures by him in the care and management of the estate during his guardianship, including attorney, probate and appraisers' fees. Nothing was realized from Boardman's estate by the guardian, only as stated in said account.

On the hearing upon said report, it was considered and adjudged by the court that the report should be accepted, and that the sum of $448.83, being the balance stated at the foot of the account marked A., is due, and should be allowed, to Harwood on his account as guardian of Boardman as aforesaid, and that, as each and all of the items of the account marked B. accrued since the making of the order and decree appealed from by Boardman, and were never presented to, or passed upon by, the said probate court, the items of the account marked B. ought not, for this reason only, now to be adjudicated upon in this court, and should, for the same reason only, be disallowed, and that Harwood, appellee, should recover his costs arising from the appeal.

To so much of the decision and judgment as related to the items of the account marked B., Harwood, appellee, excepted. To the decision and judgment in every particular, except in respect to the disallowance of all of the items of the account marked B., the said Boardman, appellant, excepted.

*G. W. Harman* and *A. B. Gardner* for the plaintiff.

*Charles N. Davenport* for the defendant.

The opinion of the court was delivered by

WILSON, J. This is an appeal by James Boardman from an order and decree of the probate court, allowing a certain account presented to that court by Harwood, guardian of the appellant, the appellant having been, by the probate court, adjudged and decreed to be insane and incapable of taking care of himself. Whether the appellee is entitled to recover, and the extent to which he can recover, must depend, to a very great extent, upon the statutes in force at the time of his appointment as guardian, and upon the authority of the guardian of an insane person under those statutes. The principal grounds on which the appellant resists a recovery in this

case are, 1st, That by the act of 1848 the law authorizing the probate court to appoint a guardian for an insane person, with power to act pending an appeal of his ward, was repealed.   2nd. That if the appointment of the appellee as guardian in December, 1862, was regular, it was vacated in the revision of our statutes, which took effect on the 1st day of August, 1863.   3d. That on the question of the appellant's insanity, the jury having found a verdict in his favor, he is not liable for any part of the costs, charges, or expenses mentioned in the guardian's account.   Prior to the passage of the act of 1848 the question of insanity was first tried by two justices of the peace, commissioned by the probate court for that purpose, and upon their report to the probate court that the person was insane and incapable of taking care of himself and needed a guardian, that court might appoint some suitable person to that trust, from which finding of the justices and order and decree of the probate court, the person so adjudged insane might appeal.   But the statute, authorizing such proceeding, expressly provided that the guardian should continue to act notwithstanding the appeal by his ward.   In 1848 the former statute regulating the appointment of guardians for insane persons and spendthrifts was so amended as to authorize the probate court, upon application for that purpose, and notice to the person supposed to be insane, to hear and determine the question of insanity and to appoint a guardian.   The first clause of the act of 1848 reads as follows :   " So much of said chapter (ch. 65 of the Revised Statutes), as authorized the probate court to appoint guardians for insane persons and spendthrifts is so amended, that upon application therefor," —then follows the direction for the proceedings preliminary to the hearing before the probate court and the appointment of a guardian. Section 3 of the act of 1848 repealed so much of chapter 65 of the Revised Statutes as was inconsistent with the act of 1848.   The only alteration of chapter 65 of the Revised Statutes, made by the act of 1848, was that dispensing with an inquisition by justices of the peace, and authorizing the probate court to hear and decide all questions as to insanity.   The act of 1848 declares the purpose of its enactment, and it repealed nothing consistent with its provisions. That act took away no authority or right given to the guardian by chapter 65 of the Revised Statutes, and it would seem to be clear

that the statute, authorizing a guardian to act notwithstanding the pendency of an appeal, was in force at the time the appellee was appointed guardian of Boardman.

2nd. Was the appointment of the appellee vacated by the revision of our statutes which took effect on the 1st day of August, 1863? We think not. The general statutes provide that the probate court may appoint guardians for insane persons, and they give the right of appeal to the ward. The general statutes require guardians to give bonds and to manage the affairs of their wards, and no distinction, in this respect, is made between the guardian of an insane person and the guardian of any other person. The general statutes do not in express terms take away the right of the guardian to act pending an appeal, and it would seem that, upon a reasonable construction of their provisions, they give such right. But the present action does not in any way involve the question whether a guardian can act pending an appeal by his ward. In this case it is evident that the guardian acted under his appointment made in December, 1862, at which time the statute, in express terms, authorized him to act pending the appeal. The general statutes did not abolish the office of guardian, and their provisions did not revoke the authority of a guardian appointed under a previous statute.

3d. It appears that the guardian acted in good faith; that he was in no way a party or privy to the proceedings instituted for his appointment. He derived his authority to act, in the premises, from the probate court, and under the statute it was his duty to render the service and make the disbursements charged in his account. The statute giving a guardian pay for his services and disbursements does not except a case like the present, nor are we aware of any principle or authority which would justify us in denying the appellee's right of recovery.

4th. We think the account marked B. should be included in the judgment for the plaintiff. This is, in substance, an action of book account, in which it has long been the practice in this state to adjust all charges due and payable at the time of the trial. It appears that the account marked B. accrued between the decree of the probate court allowing the account marked A. and the close of the plaintiff's guardianship. No question is made but that the latter account was

·due and payable at the time of the hearing before the referee, and it appears that he adjusted the accounts up to that time; and both ·accounts were, by the appeal, regularly before the county court.

The judgment of the county court is reversed and judgment for the plaintiff for the amount found due by the referee, including the appellee's account up to the time of trial in the county court.